UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAURA C.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. 3:18-cv-5000-BAT

**ORDER REVERSING AND REMANDING**

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g), 1381, seeking judicial review of the final administrative decision of Social Security Administration denying her application for benefits under Title II of the Social Security Act. Plaintiff alleges the Administrative Law Judge (ALJ) erred in failing to resolve a conflict between vocational expert (VE) testimony and the Dictionary of Occupational Titles (DOT), in failing to consider Plaintiff's functioning prior to any improvement, and improperly weighing medical opinion and Plaintiff's symptom allegations.

Because the Court finds the ALJ erred when he failed to obtain a more definitive explanation from the VE, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

ORDER REVERSING AND REMANDING - 1

## BACKGROUND

Plaintiff filed an application for benefits in September 2014. Tr. 157-63. This claim was denied initially and on reconsideration. Tr. 103-06, 108-10. Plaintiff, who was represented, appeared and testified at the July 2016 hearing. Plaintiff's husband and vocational expert Steve Duchesne also testified at the hearing. Tr. 37-65. The ALJ issued a decision finding Plaintiff was not disabled on December 2, 2016. Tr. 11-30. The Appeals Council denied Plaintiff's request for review on October 27, 2017. Tr. 1-4.

Utilizing the five-step disability evaluation process,[1] the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged onset date of January 3, 2012, through her date of last insured of September 30, 2016. At steps two and three, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, psoriatic arthritis, obesity, posttraumatic stress disorder (PTSD), panic disorder with agoraphobia, and math disorder and that these impairments did not meet or equal the requirements of a listed impairment.[2] The ALJ determined Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a), except:

> [s]he could never climb ladders, ropes or scaffolds, or crawl. She could occasionally climb ramps and stairs, stoop, kneel and crouch. She could frequently handle and finger bilaterally. She needed to avoid concentrated exposure to extreme temperatures, wetness, vibrations, and hazards. She was limited to simple, routine and repetitive tasks consistent with unskilled work. She was limited to low stress work, which is defined as work requiring few decisions/changes. She could not interact with the public. She could have occasional contact with coworkers and supervisors.

At steps four and five, the ALJ determined Plaintiff lacked the RFC to perform past relevant work but considering her age, education, work experience, and RFC, there were three

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING AND REMANDING - 2

jobs that existed in significant numbers in the national economy that she can perform: (1) document preparer (DOT #249.587-018) (sedentary, unskilled work with SVP of 2), with 15,000 jobs nationally and 200 jobs regionally; (2) final assembler (DOT #713.687-018) (sedentary, unskilled work with SVP of 2), with 30,000 jobs nationally and 500 jobs regionally; and (3) semi-conductor, touch-up screener (DOT #726.684-110) (sedentary, unskilled work with SVP of 2), with 10,000 jobs nationally and 150 jobs regionally. Tr. 11-29. In determining Plaintiff's ability to perform jobs in the national economy, the ALJ considered the testimony of VE Steve Duchesne. Tr. 1023-1029.[3]

## DISCUSSION

### A. The ALJ Erred in Failing to Reconcile a Conflict Between the VE's Testimony and the DOT

The ALJ's RFC assessment includes additional limitations in Plaintiff's areas of functioning that are not addressed in the DOT (off task activity, extra absences, no interaction with the public and only occasional contact with co-workers and supervisors, and low stress work). Because the VE offered only his "professional experience" as a basis for concluding that Plaintiff could still perform the three jobs identified despite these areas of functioning, Plaintiff argues the ALJ should have obtained a more definitive explanation before concluding there are jobs she can perform, particularly as two of the jobs identified "cannot credibly be said to exist in the numbers testified to, if at all." Dkt. 25, pp. 5-7 (referring to document handler and touch-up screener jobs).

---

[3] The transcript of oral hearing (Tr. 37-65) was originally filed, along with the certified administrative record, on April 23, 2018. *See* Dkt. 6. On August 28, 2018, Defendant supplemented the record with a corrected copy of the transcript because the hearing testimony had not been accurately transcribed in the original transcript. Dkt. 21.

Defendant argues the ALJ was entitled to rely on the VE's testimony because a vocational expert's recognized "expertise" provides the necessary foundation for his testimony (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)), and even if the VE erred as to two of the jobs, the VE still identified at least one more job existing in sufficient numbers in the national economy. Dkt. 26, pp. 15-16. The testimony at issue is as follows:

> Q. Now, we talked about several issues that are not directly addressed in the DOT. That is the off task activity, the extra absences. We talked about the identity of the person that the individual is having social contact with. We talked about the definition of low-stress work. ***Those issues are not directly addressed or directly categorized in the DOT. What is all of that testimony based on?***
>
> A. ***It would be based upon my professional experience***.
>
> Q. And has the remainder of your testimony been consistent with the Dictionary of Occupational Titles?
>
> A. It has.

Tr. 1026 (emphasis added).

At Step Five, the burden shifts to the Commissioner to show Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). In determining whether a claimant is disabled, an ALJ may consult various sources, including the DOT and a VE. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017). "Presumably, the opinion of the VE would comport with the DOT's guidance." *Id*. If, however, the VE's opinion the claimant can work "conflicts with, or seems to conflict with, the requirements listed in the [DOT]," the ALJ has an obligation to ask the VE to reconcile the conflict before relying on the VE's testimony. *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at \*2 (2000)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). The ALJ's

obligation to reconcile a conflict is triggered only where the conflict is "obvious or apparent." *Gutierrez*, 844 F.3d at 808. To be an obvious or apparent conflict, the VE's testimony "must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id*.

Here, the ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) but was limited to "simple, routine and repetitive tasks consistent with unskilled work" and was limited to low stress work, no interaction with the public, occasional contact with coworkers and supervisors. Tr. 19. Recognizing the existence of a conflict between the RFC and DOT, the ALJ asked the VE to identify the basis for his conclusion that Plaintiff could still perform the jobs identified. Tr. 1026. The VE did not provide a reasonable explanation.

While there is no question the VE was qualified to testify and there was no challenge to his qualifications (*see* TR. 1023), the ALJ erred in not determining the factual foundation of the VE's "professional experience" as the sole basis for his conclusion that, despite the conflict, Plaintiff could still perform the jobs identified. Where a potential conflict exists, "[t]he ALJ must ask the expert to explain the conflict and 'then determine whether the vocational expert's explanation for the conflict is reasonable' before relying on the expert's testimony to reach a disability determination." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015); *Massachi*, 486 F.3d at 1153–54; *see also* Social Security Ruling 00–4P, 2000 WL 1898704, at *2 (Dec. 4, 2000). The ALJ's failure to resolve an apparent inconsistency that leave the Court with a gap in the record that precludes the Court from determining whether the ALJ's decision is supported by substantial evidence. *See Massachi*, 486 F.3d at 1154 (stating that "we cannot determine whether the ALJ properly relied on [the vocational expert's] testimony" due to unresolved occupational evidence).

Relying only on the VE's "professional experience" is not the same as obtaining a reasonable explanation for the conflict. The VE offered no further explanation and more importantly, the ALJ did not inquire into, the extent of the VE's "professional experience," *i.e.*, whether he had placed people in jobs with similar limitations, or was relying on surveys, market studies, research, or articles. *See*, *e.g.*, *Buckner-Larkin v. Astrue*, 450 Fed. Appx. 626, 628 (9th Cir. 2011) (VE's conclusions were based "on his own labor market surveys, experience, and research."); *Rodriguez v. Berryhill*, 2017 WL 1054782, \*13 (E.D. Cal. 2017) (VE's opinion about use of walker was based on placing people in those jobs). Ordinarily, the ALJ should "ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC." *Lamear*, 865 F.3d at 1205. The ALJ failed to do so here.

Plaintiff also notes the failure to reconcile this conflict is even more concerning when one considers the nature of the jobs identified. Plaintiff contends the existence of the document preparer and touch-up screener jobs is highly suspect in light of technological advances and outsourcing of jobs to foreign countries. Dkt. 25, pp. 5-6. Defendant counters that even if these two jobs are unavailable, the VE identified the job of final assembler with 30,000 national and 500 regional jobs, so there is at least one job that does exist in significant numbers in the national economy.[4]

But the number of jobs available is not the issue. The issue is whether the ALJ should have inquired into the "professional experience" of the VE and whether the ALJ's failure to do

---

[4] In addition, the DOT assigns Level 3 Reasoning to the occupation of document preparer, and the ALJ did not ask the VE how Plaintiff could perform an occupation requiring Level 3 Reasoning despite her limitation to simple, routine tasks. *See* DOT 249.587-018; Tr. 1026. Thus, the ALJ failed to recognize and reconcile this apparent conflict. *See Zavalin,* 778 F.3d at 846-47 (an ALJ errs if he does not ask the VE to explain how a person limited to "simple, routine, or repetitive work" could "nevertheless perform Level 3 Reasoning").

ORDER REVERSING AND REMANDING - 6

so undermined the evidentiary basis of his Step Five Analysis, *i.e.*, that despite the conflict, Plaintiff could perform any of the three occupations identified by the VE.

The Court accordingly finds the ALJ erred by failing to make factual findings that would reasonably explain the conflict. The ALJ's reliance on the VE's "professional experience" in sufficient; this determination says little more than the ALJ relied upon the VE's testimony as an expert. But where there is a discrepancy between the DOT and a claimant's limitations, the ALJ must obtain from the VE an explanation that addresses the conflict in sufficient detail in order to determine whether the conflict has or has not been reasonably resolved. The Court also finds the ALJ's error was not harmless because as a result of the error, the ALJ's Step Five finding was not supported by substantial evidence. *See*, *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination.").

**B.** **The ALJ Properly Considered Plaintiff's Functional Capacity Throughout the Period Under Consideration**

Plaintiff argues the ALJ failed to consider her functioning during the entire period under consideration as evidenced by the ALJ's reliance on reports of improvement when he gave less weight to the opinions of Plaintiff's treating psychologist, Nancy Block-Olexick, and to Plaintiff's allegations. Dkt. 25, p. 8 (citing Tr. 26). Plaintiff contends if she experienced improvement relating to her ability to perform basic work activity between December 2014 and March 2016, this means she did not have the same functional capacity before that time and therefore, the ALJ erred by considering only her "post-improvement" functioning in assessing her RFC. (Plaintiff alleged disability beginning in January 2012 and therefore, the ALJ should

have considered a closed period of disability for the 35 months prior to Dr. Olexick's assessment in December 2014).[5]

Essentially, Plaintiff would have the ALJ engage in a "closed period case" analysis, such as set forth in *Attmore v. Colvin*, 827 F.3d 872, 875-76 (9th Cir. 2016) (*i.e.*, where the ALJ finds – in the same decision – that a claimant had been disabled for a closed period of time and had since improved). In a closed period case, the ALJ is required to compare the medical evidence used to determine the claimant was disabled with the medical evidence existing at the time of possible medical improvement. *Id.* at 876; 20 C.F.R. § 404.1594(b)(1).

Here, the ALJ did not find Plaintiff had been disabled for a closed period of time and had since improved but rather, after reviewing the medical evidence from 2012 to 2016, the ALJ was convinced the RFC was sufficient to address Plaintiff's documented ongoing psychological limitations because the RFC "has significant limitations on complexity, stress and virtually all social contact." Tr. 24. In addition, while Plaintiff's symptoms may have waned between September 2014 and December 2014 and improved thereafter, this does not necessarily mean she had a lower functional capacity before that time. *See*, *e.g. Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("Symptoms may wax and wane during the progression of a mental disorder.") The ALJ based the finding that Plaintiff "could perform the demands of the above residual functional capacity," on medical evidence from 2012 through 2016. Tr. 20-21. In March and November of 2012, Plaintiff was volunteering at her son's school, she found her medications were helpful with no side effects, and she had been seeking employment "for quite some time."

---

[5] *See* 42 U.S.C. § 1382c(a)(3)(A) ("an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.").

ORDER REVERSING AND REMANDING - 8

*Id.* (citing Tr. 379, 402). In February 2013, Plaintiff reported that she was participating in Zumba, yoga and walking, going to school, and that her hobbies included camping and fishing. Tr. 433.

The Court finds the ALJ did not err in not taking the possibility of a closed period of benefits into consideration as the record does not support such a finding.

**C.     The ALJ Did Not Err in Weighing Dr. Olexick's Opinions**

"[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Where there is a conflict in medical opinions, an ALJ need only give "specific, legitimate" reasons supported by substantial evidence in the record for rejecting the opinion of a treating doctor. *Molina*, 674 F.3d at 1111. Plaintiff argues the ALJ erred in weighing the opinions of her treating psychologist Nancy Block-Olexick, Ph.D. Dr. Olexick's opinions are contained in three letters which she submitted on behalf of Plaintiff between September 2014 (when she first began treating Plaintiff), and March 2016. Dkt. 25, pp. 9-12 (citing Tr. 26):

    1.     <u>December 2014 Opinion</u>

When she wrote her first letter on December 6, 2014, Dr. Olexick had seen Plaintiff eight times. She noted Plaintiff's work on exposure to longer and more frequent periods out of the house, and in "learning to manage anxiety and fear through discontinuing contact with or proximity to triggers." Dr. Olexick stated Plaintiff was "temporarily unable to work at this time due to her psychiatric status related to PTSD" but, with the support of the Department of Vocational Rehabilitation, Dr. Olexick opined "she should be able to start school in the near future." Tr. 635, 978. The ALJ gave this opinion partial weight "because it was just after [Plaintiff] started treatment and her condition improved after this time." Tr. 26.

The December 2014 opinion was written after only three months of treatment (Tr. 635) and the record indicates Plaintiff's condition did improve – in March 2015, Plaintiff said she felt "significantly better" from a mental health perspective, and the doctor's subsequent treatment notes and March 2016 letter indicate Plaintiff had made "moderate to significant" progress during her treatment. Tr. 976. In addition, Dr. Olexick's December 2014 opinion merely indicates Plaintiff was temporarily unable to work between September 2014 and December 2014. Tr. 635.

Thus, the ALJ did not err in reasoning that this opinion was limited, early in Plaintiff's treatment, and that Plaintiff's condition improved thereafter.

2. December 7, 2015 Opinion

In a December 7, 2015 letter to the Pierce County Superior Court Jury Administration, Dr. Olexick opined Plaintiff may not be able to emotionally tolerate the jury experience due to unresolved abuse and violence she has experienced. Dr. Olexick also noted "[p]resently, she is able to leave the house, drive to local destinations and associate with new acquaintances 0-3 times a week." Tr. 977. The ALJ gave little weight to this opinion "because the records do not support this level of severity." Tr. 26.

Dr. Olexick's treatment notes indicate in the months leading up to the December 7, 2015 opinion, Plaintiff was able to leave the house, drive outside her local area, and associate with new acquaintances. The incongruity between a doctor's opinion and her treatment notes is a valid reason to discount the medical opinion. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009). For example, in October 2015, Plaintiff went out three times during the week, went to a craft party, drove to Seattle with several women she met online, and planned several more activities. Although Plaintiff reported she was still cancelling about three activities

a month based on how she was feeling, her psychologist reminded her to use her self-talk and reframing strategies so that she could launch into prompt action rather than avoid planned activities. Tr. 972. Plaintiff also went on a trip to Utah in November 2015 for a family emergency. Tr. 972. In November 2015, after Plaintiff reported going out every other the day, Dr. Olexick noted Plaintiff was now "making conscious decision to confront anxious situations rather than avoid them and continues to grow in self efficacy." Tr. 972-73. Plaintiff saw Dr. Olexick on December 10, 2015, but in January 5, 2016 reported not having left the house "since the Utah trip" due to "much emotional pain about not having any contact with her son especially over Christmas. Tr. 973.

Plaintiff argues the ALJ was required to consider these reports of improvement within the context of Plaintiff's impairments and other evidence and that the ALJ was not free to pick only those records that supported his conclusions while disregarding other evidence in the same treatment notes. Dkt. 25, p. 12. For example, she argues Dr. Olexick's treatment notes demonstrated plaintiff remained limited in her ability to leave the house consistently through the period under consideration which supports the statement made in Dr. Olexick's letter. *Id*.

However, an ALJ is entitled to rely on examples within the record to show why they do not believe a claimant is credible or for discounting a medical opinion, but "the data points they choose must in fact constitute examples of a broader development…." *Diedrich v Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (emphasis in original); *see also*, *Attmore*, 827 F.3d at 878. The record shows Plaintiff continued to make "moderate to significant" progress in treatment and was becoming "increasingly comfortable with out of the house activities and interacting with a broader range of persons." Tr. 976. In fact, by March 2016, Plaintiff sought medical and psychological clearance to become a foster parent and as discussed below, Dr. Olexick opined

she would likely make a good foster parent, and she was cleared for the foster program in March 2016. Tr. 26, 777, 976.

Thus, the ALJ did not err in concluding that treatment records did not support "the level of severity" referred to in Dr. Olexick's December 7, 2015 opinion.

### 3. March 12, 2016 Letter

On March 12, 2016, Dr. Olexick wrote a letter in support of Plaintiff's efforts to become a foster parent. At that time, Dr. Olexick opined Plaintiff had been seen 25 times since September 2014, had made moderate to significant progress, was learning to manage anxiety and fear through discontinuing contact with or proximity to triggers, was developing a social support network and becoming increasingly more comfortable without out of the house activities and interacting with a broad range of persons. Tr. 976. The doctor also noted Plaintiff's strong parenting skills, support of her husband in concluding that Plaintiff would make a good foster parent. *Id.* The ALJ gave "significant weight to the opinion regarding her progress she had made because this is consistent with the medical records showing improvement with treatment and greater activity levels. Nonetheless, the undersigned has considered all these statements in assessing the significant limitations in the above residual functional capacity." Tr. 26.

An ALJ need not offer reasons when crediting medical opinions. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (An ALJ is not required to discuss at length medical evidence that he does not reject); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (An ALJ need only explain why "significant probative evidence has been rejected.") (citation and quotation marks omitted). Thus the ALJ did not err in crediting Dr. Olexick's opinion that Plaintiff had made moderate to significant progress. Moreover, a medical opinion's consistency with the record is a relevant consideration when deciding what weight it is owed. 20

C.F.R. § 404.1527(c)(3)-(4). As previously noted, the ALJ's conclusion that Plaintiff had improved while in counseling was consistent with Dr. Olexick's opinion Plaintiff had "made moderate to significant progress in treatment." Tr. 26.

**D.     The ALJ Did Not Err in Evaluating Plaintiff's Symptom Allegations**

In evaluating the effect of pain and other symptoms on Plaintiff's RFC, the ALJ must determine if the Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. See 20 C.F.R. § 404.1529. If so, the ALJ must next evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the Plaintiff's capacity for work. *See id*. If there is no evidence of malingering, the ALJ may reject Plaintiff's testimony about the severity of her symptoms only by making specific findings stating clear and convincing reasons supported by substantial evidence for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Even assuming that any one of the ALJ's reasons for discounting Plaintiff's subjective symptom testimony was improper, any such error is harmless because substantial evidence supports the ALJ's ultimate finding. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). If the ALJ's reasoning is clear and convincing, the Court should not "second guess" that decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

At issue here are Plaintiff's anxiety and posttraumatic stress disorder (Plaintiff does not challenge the ALJ's evaluation of the severity her degenerative disc disease, psoriatic arthritis, obesity, and math disorder). Plaintiff alleged her primary impediments to returning to work were her PTSD and anxiety, which made it difficult for her to leave her home. Even when she did

leave, she needed her husband to accompany her and would experience increasing anxiety when she was away from home for longer periods. Tr. 305.

The ALJ discounted Plaintiff's symptom testimony because (1) the objective medical evidence did not comport with her subjective complaints; (2) her treatment and medication history undermined her symptom testimony; and (3) her activities cast doubt on her symptom testimony.

    1.    <u>Objective Medical Evidence</u>

An ALJ may reject symptom testimony that does not comport with objective evidence in the medical record. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

The ALJ found Plaintiff's allegations of significant limitations related to her mental impairments were inconsistent with medical evidence. For example, her treating physicians, Dr. Kinder repeatedly noted she was negative for depression (Tr. 25, 850, 861, 872, 883, 888, 893, 900, 902, 908), and Dr. Farook repeatedly found she had no appearance of anxiety, depression or agitation (Tr. 764, 771). The ALJ also noted records from Plaintiff's treating psychologist showed much of Plaintiff's issues were related to "situational stress such as family conflict rather than symptoms from her medically determinable impairments (Tr. 25, 966-68 –chief complaints related to ex-husband filing for full custody of her son), 973 –hasn't left home and reported "much emotional pain about not having contact with her son, especially over Christmas), 974 – reports concerns about safety of her son).

Based on these findings, the ALJ did not unreasonably conclude that the objective evidence was not consistent with the severity of limitations alleged. Tr. 25.

2. <u>Treatment and Medication</u>

The ALJ also discounted Plaintiff's symptom testimony because the record revealed "treatment/medications has been generally successful in controlling [Plaintiff's] mental health symptoms." In March 2012, Plaintiff reported that her anxiety medication was helping, and that she was not experiencing any side effects. Tr. 20-21, 402. In March 2015, Plaintiff informed her treatment provider that she felt "significantly better" with medication and weekly counseling. Tr. 25, 723. Plaintiff's treating psychologist repeatedly indicated that her prognosis was "good." Tr. 968, 969, 975, 976. And, in March 2016, her treating psychologist stated that she had made "moderate to significant" progress in treatment and that her anxiety and panic attacks had "abated to a great extent." Tr. 25, 976. In addition, Plaintiff testified at the hearing that her mental health medication worked "pretty good." Tr. 25, 50.

Plaintiff contends that any improvement in her functioning did not result in an ability to leave the house frequently or for extended periods. Dkt. 25, p. 15 (citing treatment notes where she reported cancelling activities or not leaving her home – Tr. 51, 971, 972, 973). However, these treatment notes indicate largely the situational stressors previously considered by the ALJ, *i.e.*, not leaving her home in August 2014 due to her son's "challenging" behavior and a "disappointing contact" with her mother (Tr. 971); not leaving her home in January 2016 (almost eighteen months later), when she was in "much emotional pain about not having any contact with her son" (Tr. 973). Treatment notes also indicated Plaintiff displayed a tendency to avoid anxiety-provoking situations but was working on "graduated exposure to longer and more frequent periods out of the house," that she was capable of leaving her home, and was consistently encouraged to do so. Tr. 969-70, 972-74, 976.

Plaintiff also argues the improvement noted by her treating psychologist did not relate to her ability to leave her home. Dkt. 25, p. 16. However, Dr. Olexick explicitly stated Plaintiff "has become increasingly more comfortable with out of the house activities and interacting with a broad range of persons." Tr. 976.

The ALJ reasonably determined Plaintiff's conservative and effective treatment history undermined her testimony of severe symptoms and limitations, and the effectiveness of medication is relevant to the evaluation of a claimant's symptom testimony. 20 C.F.R. § 404.1529(c); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling . . . .").

### 3. Plaintiff's Activities

The ALJ also discounted Plaintiff's subjective complaints because the record shows she participated in other activities that are inconsistent with the degree of symptoms reported. Plaintiff argues the ALJ's subjective symptom analogy is flawed in this respect because he failed to meet the specificity requirements explained in *Brown–Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015). Dkt. 27, pp. 5-6.

In *Brown–Hunter*, the ALJ "stated only that she found, based on unspecified claimant testimony and a summary of medical evidence, that 'the functional limitations from the claimant's impairments were less serious than she has alleged.'" 806 F.3d at 493. The Ninth Circuit held the ALJ's symptom analysis was erroneous, noting that a reviewing court could not "discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found [the claimant's] testimony to be not credible." *Id.* at 494. Here, however, the ALJ did not make "only a general credibility finding without providing any reviewable reasons" for doing so but provided specific reasons for discounting

Plaintiff's testimony (objective medical evidence, treatment and medication, and Plaintiff's activities). In addition, even if the ALJ could have stated each reason more clearly (*i.e.* by identifying which activity negated the physical and which negated the mental symptoms, as Plaintiff suggests), the Court is still able to "reasonably discern" the ALJ's path. *See Yost v. Colvin*, 2016 WL 2989957, * 7 (W.D. Wash. May 24, 2016) (ALJ described in detail plaintiff's various activities of daily living, which he concluded were inconsistent with her assertion that she has disabling functional limitations); *see also Potter v. Astrue*, 2012 WL 1071131, *10 n.5 (D. Or. Mar. 29, 2012) ("As the Ninth Circuit has explained, it is not necessarily reversible error when the ALJ fails to explicitly link his reasons to the rejection of certain evidence, as long as his reasoning is clear from his decision") (citations omitted), *rev'd on other grounds*, 571 Fed.Appx. 569 (9th Cir. 2014). The Court finds, here, the ALJ provided sufficient explanation of the significance of these activities to allow the Court to weigh the evidentiary basis for his findings.

The ALJ summarized Plaintiff's daily activities in two paragraphs. In the first paragraph, the ALJ noted in her first function report dated December 2014, Plaintiff stated she spent time with her family daily; she cleaned and did chores regularly; she was able to drive; and she went to church, doctor appointments, grocery stores, and therapy. Tr. 25, 202-03. In the second paragraph, the ALJ noted other activities that were inconsistent with the degree of symptoms reported. For example, in March, 2012, Plaintiff volunteered at her son's school (Tr. 26, 402); in April, 2012, Plaintiff reported she had been seeking employment for "some time" but needed additional medical knowledge to become more marketable (Tr. 21, 379); in April 2012, Plaintiff was walking, cleaning, gardening and playing with her children at least a few hours every day (Tr. 26, 424); in February 2013, Plaintiff exercised daily with Zumba, yoga, and walking, and

reported her hobbies included camping and fishing (Tr. 26, 433); she attended a craft party in October 2013; went snorkeling in Hawaii in January 2015 and travelled to Utah in November 2015 (Tr. 26, 972-73, 969-70). And, in March 2016, Plaintiff sought medical and psychological clearance to be a foster parent. Tr. 26, 712, 754, 757, 762. Her treating psychologist recommended plaintiff would make a good foster parent, and she obtained the necessary medical clearance. Tr. 26, 766, 777. As to this latter activity, the ALJ noted "[t]his requires a great deal of physical and mental stamina, and is not consistent with claimant's allegation of severity at the time. Tr. 26.

On this record, the ALJ reasonably concluded that although Plaintiff reported she had difficulty leaving her home, her activities showed she was more functional than alleged.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reevaluate his Step-Five finding that Plaintiff could perform the work identified by the vocational expert.

DATED this 23rd day of November, 2018.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge